[Civ. No. 235. Fourth Appellate District.—February 19, 1930.]

FANNY HIGGINS, Appellant, v. JULIAN PETROLEUM CORPORATION (a Corporation) et al., Respondents.

Siemon & Garber, Alfred Siemon and Paul F. Garber for Appellant.

Anderson & Anderson, A. G. Ritter and John M. Martin for Respondents.

SLOANE, P. J.—The undisputed facts on this appeal show that on and prior to June 15, 1926, the plaintiff, Fanny Higgins, was the holder of a U. S. prospecting permit for prospecting and drilling for oil and gas on a tract of land in Kern County, California. This permit provided that the holder thereof should, within six months of the date thereof, or within the period of specified extensions of time, install and prosecute certain development work, and within two years from date of the permit drill for oil or gas to a depth of not less than 2,000 feet, unless valuable deposits of oil or gas should be discovered at a less depth.

On June 15, 1926, the plaintiff entered into a subcontract with one Grant, whereby the latter covenanted and agreed to furnish the necessary machinery, tools and labor, and construct on said land "a standard oil well derrick" and to drill a well to a depth of not less than 3,000 feet, unless oil in paying quantities was struck at a less depth, and to begin the actual drilling of said well within ninety days from the above date. In case of failure to accomplish this, he agreed to deposit on said date $5,000 for an extension of time, the amount to be forfeited in the event actual drilling was not commenced and thereafter prosecuted to the required depth.

Thereafter the said Grant assigned his contract with plaintiff to the Julian Petroleum Corporation, of Los Angeles, which assumed and agreed to perform all the covenants and agreements contained in the contract between Grant and the plaintiff, including the following specific agreement:

"In addition to the requirements herein contained, the party of the second part, (The Julian Corporation) shall have constructed and install a first class rotary drilling outfit, and commence actual drilling of said first well on or before the First day of Sept., 1926, or in case of their failure so to do as provided by the terms of said contract, they will furnish the bond of $5,000 therein required on or before the first day of Sept., 1926, which shall entitle the party of the second part to a three months' extension only under the terms of said contract, to-wit, until the 15th day of December, 1926, in which to commence the actual drilling of said well."

The bond in question was thereafter executed by the Julian Company and defendant Metropolitan Casualty Insurance Company of New York, and is in words and figures as follows:

"Know all men by these presents:

"That Julian Petroleum Corporation, a corporation of the State of Delaware having an office in the City of Los Angeles, California, as Principal herein, and Metropolitan Casualty Insurance Co. of New York, a Corporation of the State of New York duly authorized to transact a general surety business in the State of California, as Surety herein, are held and firmly bound unto Fanny Higgins, of Kern County, California, in the full and just sum of Five Thousand Dollars ($5000.00) ; for the payment whereof well and truly to be made, we bind ourselves, our successors and assigns, jointly and severally, firmly by these presents.

"The condition of the above obligation is such that:

"Whereas, under date of January 10th, 1921, Secretary of the Interior under and by virtue of Act of Congress approved February 25th, 1920, entitled 'An Act to Promote the Mining of Coal, Phosphate, Oil, Oil Shale, Gas and Sodium, on the Public Domain,' granted unto Fanny Higgins of Kern County, California, an unmarried woman, oil and gas prospecting permit Serial #08899 California, through the United States Land Office at Visalia, California, covering the following described lands:

"Northwest ¼ of Section 26, Township 27 South, Range 27 East, M. D. M. 160 acres.

"Whereas, under date of April 30th, 1926, the Commissioner of the General Land Office, Washington, D. C., granted an extension of time until May 27th, 1927, for compliance with the requirements of said permit.

"Whereas, by agreement dated June 15th, 1926, said Fanny Higgins covenanted and agreed with J. C. Grant for the drilling of a well for oil upon said land, among other things; all as more fully set out in copy of said agreement hereto attached and made part of this bond.

"Whereas, said agreement provides that if the drilling of said well shall not have been commenced within a period of ninety days (90) from and after June 15th, 1926, then said J. C. Grant shall deposit a bond in the sum of Five thousand dollars ($5000.00) in favor of said Fanny Higgins

conditioned for the commencement of said well during the four months following the expiration of said nine — (90) day period: whereupon he shall be entitled to such additional time in which to commence said well.

"Whereas, by agreement dated July 1st, 1926, said J. C. Grant sold, assigned, transferred and set over unto Julian Petroleum Corporation all his right, title, and interest in and to said agreement with said Fanny Higgins, subject to certain terms and conditions; all as more fully set out in copy of said agreement hereto attached and made a part of this bond.

"Whereas, one of the provisions of said assignment is to the effect that if Julian Petroleum Corporation shall fail to commence the drilling of a well on said land on or before September 1st, 1926, it shall be entitled to an extension of three months thereafter in which to commence said well, provided it shall on or before September 1st, 1926, file the bond of Five thousand dollars ($5000.00) required of J. C. Grant under the agreement dated June 15th, 1926, as aforesaid.

"Now therefore, the condition of this bond is that it shall be void and of no effect provided Julian Petroleum Corporation or J. C. Grant or either of them shall, on or before January 15th, 1927, erect a derrick, install a rotary drilling outfit, and commence actual drilling of said well, or shall so cause the commencement of said well: otherwise this bond shall remain in full force and virtue.

"Provided, however, that the Surety hereunder shall be entitled to the benefit of any of the provisions of said permit, extension of permit, agreement or assignment, and may require the performance of any of such provisions by any party to said documents liable to or privileged in the performance thereof, to the same extent as though said Surety were specifically named in said documents and so entitled thereby. Upon written notice by said Surety to said Fanny Higgins of its desire that any of said provisions of any of said documents be exercised or complied with, then as between the Surety herein and said Fanny Higgins such exercise or compliance shall be considered as having been accomplished as of the date of said notice, without further act or notice on the part of said Surety.

"In witness whereof, said Principal and said Surety herein have caused this bond to be executed on their parts respectively, at Los Angeles, California, this 31st day of August, 1926."

Upon the alleged failure of the Julian Petroleum Corporation and the Metropolitan Casualty Insurance Company to fulfill the conditions of the bond, this suit was brought by plaintiff, resulting in the judgment for defendants, here appealed from.

The sole question is as to the sufficiency of the evidence to support the finding of the trial court that defendants did not default in performing the conditions of the bond.

The evidence discloses without conflict, that the defendants, within the time specified, installed on the premises what their witnesses describe and testify to as being, and the trial court finds to be, "a derrick and rotary drilling outfit, and commenced actual drilling of said well, and so caused the commencement of said well."

The contention here is as to whether this compliance with the actual expressed penal clause of the bond fulfilled the obligation of the defendants, or whether, as contended by appellant, defendants were bound to install, as covenanted in the Grant contract, which was accepted and assumed by the Julian Corporation, "a Standard oil well derrick with a standard or rotary drilling rig."

This action is not one to recover damages from the parties to the various drilling contracts, but is an action on the bond to collect the $5,000 penalty for its breach, as stipulated liquidated damages. No actual damages are alleged or proved. The plaintiff's right of recovery rests upon proof of a breach of the conditions of the bond, and the right to recover the $5,000 penalty as liquidated damages.

The trial court evidently construed the liability of defendants under the bond as being limited by its express terms, namely the erection and installation of "a derrick and rotary drilling outfit," and the commencement of drilling operations.

It is obvious that a compliance with this condition fulfilled the obligation of the bond, unless, as contended by appellant, there can be read into it an undertaking to carry out the provisions of the Grant and Julian Corporation

contracts for installing a "Standard oil derrick" and a different drilling rig than the one actually supplied.

The evidence sufficiently shows that a rotary drilling rig was supplied with sufficient capacity to meet the drilling requirements of the contracts, and with an equipment which some of the witnesses identified as a derrick, though admittedly not a standard derrick.

It will be observed that the bond in question nowhere provides for any particular type of derrick, or for any particular type of rotary drilling rig, and only covenants for the "commencement" of actual drilling operations on or before January 15th, 1927. The evidence supports the findings that the express conditions of the bond were complied with. These conditions contain no undertaking to continue the drilling to any specified depth, or to furnish any equipment other than a derrick and rotary drilling outfit sufficient in capacity to sink a well of the size and depth called for by the Grant and Julian Corporation contracts.

Appellants' case rests on the contention that the obligations of these contracts are incorporated in the bond by reference to such contracts as being attached to "and made part of this bond." This reference is made in the following introductory recitals of the bond: "Whereas by agreement dated June 15th, 1926, Fanny Higgins covenanted and agreed with J. C. Grant for the drilling of a well for oil upon said land, among other things; all as more fully set out in a copy of said agreement hereto attached and made a part of this bond"; and "Whereas by agreement dated July 1st, 1926, said J. C. Grant sold, assigned, transferred and set over unto Julian Petroleum Corporation, all his right, title and interest in and to said agreement with said Fanny Higgins, subject to certain terms and conditions; all as more fully set out in a copy of said agreement, hereto attached and made a part of this bond." There is also a preliminary recital that: "Whereas one of the provisions of said assignment is to the effect that if the Julian Petroleum Corporation shall fail to commence the drilling of a well on said land on or before Sept. 1st, 1926 . . . it shall file a bond of Five Thousand Dollars required of J. C. Grant under the agreement of date June 15, 1926, as aforesaid."

Of course, if the conditions for the operation of the penal obligation of the bond had been made to expressly guarantee the carrying out of the terms of these contracts, or if there had been a failure to expressly state the conditions under which the penalty of the bond would accrue, there would be some force to appellant's interpretation of the instrument.

But we think it is clear, in view of the explicit statement of the conditions under which the penalty of the undertaking was to become payable that the recitals in question, and the incorporation of the contracts in the bond were only intended, as respondent suggests, as an explanation of the circumstances under which a bond was contracted for. It may also be noted that in neither of the contracts referred to, providing for the furnishing of this bond, was it indicated what the terms should be, other than that it was to be a bond for $5,000, and was to entitle the parties to an extension "until the 15th day of December, 1926, in which to commence the actual drilling of said first well."

█ It is very apparent that the provisions of this bond were very inadequate to secure to the plaintiff the performance of the covenants of the Grant and Julian Petroleum contracts. The instrument as executed, was, however, accepted by plaintiff as a compliance with the agreement to furnish a bond, and the courts cannot extend its liability beyond the reasonable interpretation of its terms.

Respondent also disputes that this is a case for the application of the exceptional rules under which, in case of recovery, liquidated damages could be recovered. In view of our conclusions that no breach of the conditions of the bond has been shown, it is unnecessary to pass upon that point.

The judgment is affirmed.

Barnard, J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 17, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 17, 1930.